May it please the court, my name is Merle Hendricks. I'm here today representing petitioner Patricia Zelenka. The law in this case is clear. This is a case about an OPM overpayment and whether there should be a waiver of that overpayment. Can I ask you a very specific fact question in your case? Why in the world did they cut the $32.75 of CAT meds to the $20 for CAT meds? Was it a random figure that they decided to put into? I'm trying to figure out, they seem to say you're entitled to the regular CAT meds and all of the evidence of sales that you produced in 2007, which I looked at, showed the thyroid medicine was $15, $20, sometimes $30. The only other thing you had in there was flea and tick prevention, which was part of that total, all of which seems like regular medicine that would always be reoccurring. Wait, let me make sure one thing, the cats are still alive, right? They're still alive. Just checking. Given that, this medicine I assume is medicine they're going to take for the rest of their life. Correct. Why? Your Honor, I'm glad you asked this question. I have a healthy cat and I couldn't do his meds on what they allowed here. I have a cat who goes to the veterinarian once a year and isn't sick and doesn't take anything special. I spend more than that. These are companion animals for a disabled husband who spends 90% of his time at home. They're beloved members of... In what sense are they companion animals? Well, companion animals are like he spends time with them. Okay, this is a characterization you're making. It's a characterization, it's in the record. He testified in the record that these animals were important to him and that having them there and not being home alone, Ms. Zelenko works and has gone 10, 11 hours a day. Counsel, the whole companion is not an issue, right? The board has said you're entitled to payment for the meds and the only question with regard to the amount of meds, you don't have to defend the companionness, right? Isn't that right? I mean, I'm asking you. That is correct. So the only thing they've said though is we're going to award you the amount of meds that it costs you. And all of the evidence in the record is clear that it's 32.75 and all of a sudden at some point they lowered the number during the many iterations of review and I can't see any reason as to why and we have to look at that number and say, is it supported by substantial evidence? It's not, Your Honor. There's no justification anywhere in the record for this. You'll search in vain for that. What about the vet bills? Are those continuing? The vet bills are continuing in the same and similar amounts and if the record for this bill continue to go to the vet, it's an ongoing recurring expense. What about the car repair bills? Car repairs are the same. They have not bought a new car. The defendant has suggested that somehow the Mason case applies here, something about future installment payments. There's no future installment payments for these cars. It's a 15-year-old car and a 17-year-old car at this point and in order to operate them and keep them safely operating, it requires maintenance and repairs. I think the figures are actually pretty low that's repairing the two cars for around $2,900 one year and $3,100 another year. If they didn't repair the cars, I'm sorry. They did things like water a few months. If they didn't repair the cars, they'd have to buy a new car, presumably. They'd have to buy a new car and- Why would they? They've got three cars and only two people, one of which doesn't work. No, they have two cars. They have only two cars. Two cars. There's two cars. What about that 1971? There's only two cars. Isn't one of them from 1970? They're both really old and one is an Infiniti and one is a Jeep, but I don't have it. A 94 and a 97, an Infiniti and a Jeep. I forget which is the 94 and which is the 97. Those are the two operable cars. Those are the two cars for which the repairs are being incurred and they're documented. Two years. Because this case went up to the board and then back to the A.J. for a second decision, we got two years worth of expenses, so the court has an unusually broad picture of $2,900 one year and $3,100 another year. The board just said, no, those are speculative. Well, Your Honor, that doesn't meet the term speculative. Doesn't Mrs. Salinka own a 1994 Infiniti, a 1979 Mazda, and a 1996 Jeep Cherokee? Yes, she does. She's nodding at you. Excuse me. Yes. Will you please respond to the questions and you alone. Okay. And they have to be answers based on the record. Okay. Thank you. The repairs are for the two cars that are driven. There are only two cars driven. If there's a third car sitting there, that's a fact that has escaped my recollection. This has been a case that's gone on for a long time. Are any of the repairs that you're claiming attributable to the Mazda? None. Can we tell that from the record? Yes. Because the receipts are in the record. The record has the receipts and it shows what cars that are for. This is not something where we've picked a number. We have receipts and they were there in front of the A.J. and she just said in two sentences, these are speculative. What would be the procedures if you know, if, for example, well, let me ask you first, is there an extent amount that they're proposing that she pay? I know they proposed 350 at one point. Do they have another number? Are they proposing 195 since that's the gap that they think there is? That's the gap that the board thinks there is. But no, there's been no further proposal. Okay. Well, let's say they imposed 195 based on no repairs and let's say in 2008, 2009, the car breaks down completely, has to be replaced and they have to buy a new car to commute in and the car payment is $400 a month. What's the procedure for you to then, if there is one, go back and say, excuse me, but now my car expense is even higher. Here's my car payment. I can't pay the 195 anymore. How would that work? Well, they would go back in with another petition for change of circumstances. But first, you have to have the circumstances right currently. The whole statutory system in terms of determining financial hardship is based on a current determination of what they're going to have from that point going forward. And at the point, this we were talking about here, it was from the end of 2007 to 2008, for the 2008 year. Well, we now know what those figures were. They're not in this record and they're not part of this case, but that's what was the determination that the board's A.J. was looking at was what were the expenses going to be in 2008 and could she afford to repay any amount. If you put the car expenses back in, you see that they're actually upside down. What is missing from the government's assessment of this case is they were notified in April 2006 that she would not be getting the disability money or the insurance that came with the disability money. They immediately lost $1,200 in income per month and they've been trying to get back onto a right side up footing and they're not there yet. Mr. Hendricks, I need to ask you kind of a more global question. We're here quibbling about cat litter and auto expenses, which the judge below gave a great deal of time to. We don't really review facts here on appeal. How can we question what's been done by the judge below in a much more lengthy proceeding than we have? Your Honor, this is a matter of law. This is a matter of whether these expenses are ordinary and necessary expenses and the judge devoted two sentences to it. These are future car expenses. They're speculative. I won't consider them. That's all she said. There's no lengthy analysis. There's no analysis at all. But it shows that they were considered and dealt with. But the law says that ordinary and necessary expenses must be put into the calculation, not considered and then thrown away or discarded. Considered as part of the calculation to see if there's a financial hardship. You have to plug in a number there. I would have no problem if she plugged in a number and said, well, I think there's a high so I'm only going to give $2,000. But she gave zero. It's zero for $2,900. Zero for $3,100. So if you plug that in, it's over $200 a month. That takes the $195 that the board found and sets it up. There were also lots of errors in her decision, which the board did correct. We pointed out at least eight mathematical errors that she made and they corrected all of those and got to the $195 figure. But there's no mention of what she did here. I think it just escaped their attention. Counsel, suppose that we say that there is substantial evidence for everything the board did so that her monthly expenses are properly calculated at $6,605 and her monthly income is $6,800 with a difference of $195. The regulation still says that there's financial hardship if she needs substantially all of her current income. Did you argue and are you arguing to us, I want to make sure I understand your argument, that given the very, very small difference, even though she is not technically in the red, if we affirm, that that still constitutes substantially all of her income such that the board shouldn't be able to continue to go after her? I believe that the percentage that she has left over at $195 is so small. It's less than 3%. It is substantially all. And that's giving a zero for the veterinary expenses and a zero for the car repairs. If you put anything in and drive that number anywhere down close to $100 a month, you've then reached a point where this clearly needs to be a waiver. But I'm wondering, speaking of waiver, whether you made this argument. That's what I'm wondering. Absolutely, Your Honor. I saw most of the briefing to be about the specifics of car repair and CAT, meds, and things like that. But I'm wondering, did you make the big picture, bigger argument, of even if you accept everything they say as accurate, this constitutes substantially all? We made that argument below, Your Honor, and I believe it's in the brief. That's what the law requires. If you determine that she's using substantially all of her assets for her ordinary and necessary expenses, you have to reverse because the board's determination is that this $195 is a surplus and that she ought to just turn this over to OPM on a regular basis. I want to save the rest of your rebuttal, Mr. Hendricks. Mr. Dierberg. May it please the court, the board reasonably determined that Ms. Zelenka was not entitled to a waiver. One of the arguments that Ms. Zelenka's counsel makes is that there was an erroneous legal standard applied and that the board looked to whether or not these expenses were regular recurring expenses. I think this is a totally reasonable interpretation of the law. It's an interpretation of the law that the MSPB has used in the past, in particular in cases like Alexander, where the administrative judge in that case reduced household expenses, noting, and I quote, noting that she did not show that her claimed amounts for fence and other home repairs were regular recurring expenses. The full board stated that it did not find any error in that determination. Do we get to review those kinds of determinations? Do we review them for substantial evidence? Well, I think it's, you know, it could be viewed under the abuse of discretion, arbitrary and capricious test. I think it kind of depends on what exact... It's a fact finding. I don't know the answer to this question I'm asking you. It sounds like a fact finding. Do we not review it for substantial evidence? It is substantial evidence, yes. It's not a de novo review by any strategy. It means if there's any evidence that supports it, we have to accept it, right? Correct. Okay, so what's the evidence? Any evidence? I mean, you know, evidence such that a reasonable person would accept that to support the conclusion. So where is the evidence that supports? I realize this doesn't sound like a lot of money to you, but given the very small margin here, where is the evidence to support reducing her cap meds from $32.75 a month to $20 a month? She gave supporting documentation for every month over all of 2006 and 2007. The meds were always the same. In fact, they went up in price at one point, you know, because meds just do that. They become more expensive over time. And I just can't find a single scrap of paper or even a sentence. I just see all of a sudden the number was changed in the board opinion. So is that possibly not supported by substantial evidence, that one little snippet? No, Your Honor, because if you look at page 1127 of the record... Okay, can we look at 1127 of the record? Give us a hint while they're looking. Okay, yes. So on page 1127, Ms. Zelenka herself or her attorney stated in a chart the medication in parentheses routine was $20. Where are you? Page 1127, at the top of the page, there's these average figures and the medication in parentheses routine, $20. She may have had medication on top of that and may have produced, I think she probably did produce receipts for medication above that. You can see in the chart below there's medication above and beyond that. But in this page, she does not refer to that as being routine. You'll note that in 2006, so she had some surgery, some medication in that time frame as well. The cat? The cat did? Yes, the cat did, yes. There was also an emergency visit in 2006. So in 2006, a substantial portion of the expenses were related to surgery and emergency. But to answer the question, I think the basis for stating that the routine medication was $20 was Ms. Zelenka's own statement that medication in parentheses routine was $20. Hold on. Let's be careful here. Let's go on 1129, which is the next page over, which gives a monthly account of her routine medication. I certainly see what you're saying here, but my guess is, and maybe I'm wrong because I haven't done the math as I'm sitting here, but my guess is where she says medication routine, $20, and then afterwards she says average monthly veterinary costs $70, I'm betting that she moved some of the routine medication listed on 1129 over into that as part of it. But maybe I'm wrong. I haven't done the math. But look at 1129. Well, Your Honor, I think that 1129 shows every single month, month by month, what the routine medicine is. Right. But I think that if you look at each of these months, I think that some, for example, on Act 1127. You know what? Could it be because the average on 1127 is for a two-year period, it's for mostly 2006 and only a portion of 2007, and it's clear from 1129, which includes all of 2007, that the cost of the meds went up. This explains it perfectly. They used to be $20 because, look, January, February, March, they're $20 and they went up to $30. Well, Your Honor, I think I don't know that it's. Different time periods. I don't know that it's. So the board chose to give her the cost she was paying in 2006, which she admitted that's what she was paying in 2006, instead of what the increase cost in 2007 clearly is. Well, Your Honor, I think you have to go through all the receipts to try and tie this together. I think as you indicated before, this is really a small portion. It doesn't really move the dial that much about matching her income and expenses. But I don't know that's necessarily true, that it's just the increase in price for the medications. I think it may be that she. You'll see that some of the medication, for example, in 2007 is not at $20 or $30. It's an additional amount of $75. No, but that's for the flea thing. I went back and looked. That's twice a year when the cats get the flea dip or whatever. Mr. Deaver, could you address the more global question of whether substantially all of her income is consumed by her expenses? Yes, Your Honor. Well, first of all, I think that that was not an argument that was made below because I think essentially the argument I heard today is that the OPM's policy guidelines, which the MSPB has used for the last 20 years, is contrary to law. Because what the policy guidelines, what the MSPB has done, is interpreted the substantial, it requires substantially all of your income to meet these expenses, as adding on a $50 per month sort of emergency fund or a buffer. And that has been the way that MSPB and OPM has done it for the last 20 years. And so in this case. So the way that you're telling me it's a matter of law, the way OPM always determines whether it's substantially all is as long as you've got that room for that $50 buffer, then it's not substantially all. Correct. And that's what happened in this case. Part of the expenses are not, there's $50 in the expenses that calculate. They're not real expenses. They're this buffer to make it, you know, to address the issue substantially. I remember seeing that in the list of expenses, which I thought were generous for lots of things. So as a matter of law, you say that $50, as long as there's $50 of wiggle room between the amount that she spends every month and the amount she earns every month, then she doesn't need substantially all of her income. $50. That's the test that's been applied. I guess I would say that it is part of the guidelines to say that that's a, I wouldn't say it's unequivocal rule. There may be exceptions. But again, this is not something that was argued below. Well, what about the, are you familiar with the Fearon versus OPM case? It's an MSPB case. Yes, Your Honor. So what about that? I mean, she had $80, Deborah Fearon had $80 per month of surplus. And nonetheless, they found it was a hardship when exactly this reason, she needs substantially all of her income, despite the fact that she had $80 a month of surplus. And they then went ahead and said, we're going to waive more than 50% of the debt she owed. And they cited as part of that the fact that, look, realistically at $80, it would take her 127 months to repay this debt. That's absurd. That would be a large portion of her life. In this case, I calculated it's going to take her 230 months to pay this back. Your Honor. It sounds like I'm far away. Could you please allow him to speak? We came to hear him. Thank you. Your Honor, first of all, it's within the discretion of first OPM and then the board to decide whether or not there's a partial waiver. There should be a partial waiver. So it's one possibility that the board could decide to grant a partial waiver. But in the instance of this idea of payments, there's no rule that says you have to make payments within a certain period of time. And this court has affirmed decisions by the board where I think in one case it was 177 payments. And that was the Baldwin case, recently affirmed in 2008. So there are these instances where payments may be stretched over a long period of time. And the stretching of payments over a long period of time is really designed to help the individual so that it's not imposed all at one time. Apparently this one would extend beyond her retirement date, when presumably she won't be making the kind of income she's making now. But I wanted to ask you about the car repairs. Couldn't we almost say, as a matter of judicial notice or something, that old cars are going to need repairs, more than zero at least? Or that if one doesn't have an old car and one stops repairing it, that one, if one is going to get to work, will need to buy a new car, which will be even more expensive. Isn't that sort of hard to... Well, no, Your Honor, because I think there needs to be evidence to support that. What kind of evidence could you say to support the future that your car is old and statistically speaking it's going to need to be repaired or replaced? Yes, if there were statistics to support that, if they presented to the board statistics that stated that... Can you make any kind of argument that it wouldn't? Have you ever heard of such a thing? Well, it might be possible that someone could come up with statistics. They did not. But it's possible that someone could have, and if they did, then maybe the board would consider that and decide whether or not that amount is claimed. But let's say in the future, in 2008, she had some expenses, so she would just come in each month or every six months and say, oh, this week it was my radiator and it was this much, and next week it was my transmission and it was even more. I mean, how often do they come in? How quickly do you turn them around? Well, Your Honor, the waiver decision is, I think, sort of a unique creature of the law. I mean, this is basically a debt that's owed to the government. Ordinarily, in a debt that's owed to government, it's just a collection matter, but the CSRS provides an avenue where you can seek a waiver. And essentially, it's more or less a one-time determination, and you don't come back periodically to seek revisions to the waiver. Right, but if you charge her $195 a month based on no auto repair, and then the next month she has some auto repair, she will have to come back in, I guess, and say, excuse me, but this month I can't make the $195. It's no longer speculative. I now have a radiator bill that's $310, and I can't pay it. So is that how it would work? So you'd want her to come in every couple months or every year? No, Your Honor, because what OPM... For an adjustment in the amount, not for a waiver necessarily, but for an adjustment in the amount. Your Honor, what the law requires and what OPM wants is her to present the evidence at the time she's given to present that evidence. And so it could have been, for example, in the auto repairs, it could have been, you know, if she'd gone to a mechanic and said, you know, here's my car. What's the condition of it? What do I need to repair? Can I provide some evidence about that? Or it could have been if there's statistical evidence about, you know, a car of this age or just what's the average repair, she could have presented that to the board. The board could have considered it. But all we have now is just essentially past information about repairs in 2006 and 2007. Some of these things are like repairing motor mounts, you know, replacing a fuel injector, things that there's no... She expects these things that she didn't allege. These things need to be replaced in the immediate future. And it's a matter of... It's just a matter of proof. Right. But she can come back in the future, I take it, and say you're charging me $195 a month now, but my expenses have gone up. Can she not? What she could do is... $195 in perpetuity if you say it's $195 now. Right. That's not the hope or the way that the statutory scheme is designed for her to periodically, each month, come back with revisions to her expenses. Can she? Can she? I mean, what if she does have car repair expenses? Or if a car breaks down and she has to buy a new one, what does she do? What would be your idea of how this thing would go? Well, I think it depends on what happens after waiver determination is decided. Let's say we don't waive or you don't waive and you charge her $195 a month based on no auto repair. Okay, but let me clarify first that we cannot impose a payment plan on her. We provided the opportunity to her as essentially a settlement. If she wants to do a payment plan over this period of time, she could do that. Mr. Dierberg, she received overpayments for nearly four years, right? Yes. From 2002 to 2006. How much were those overpayments? They amounted ultimately to $45,000, right? Correct. When did she first get notice that she was getting far more money than she deserved? 2006. Well, and in fact, didn't she seek that sort of notice from her employer or from somebody repeatedly? Didn't she call and say, why are you sending me these? I'm making more money now. I'm not sure I should be getting these. Should I be getting these? And nobody ever got back to her and told her, no, you shouldn't be getting these. Isn't that the way it was? Well, I guess one thing is it's no longer an issue in the case, as you're aware. The fault. Right, the fault. Because if it was determined that she was partially at fault, then she would not get it regardless of the financial circumstances. But to answer your question about what happened, I think the way this happened was she knew of the 80% limitation, and I think she contacted OPM, and OPM told her that essentially when we determine that you've exceeded it, we'll let you know. And that was obviously not the best answer to give, but that was the answer that was given, and the board determined that she was not at fault. Does that get factored in at all in figuring out waiver? I mean, once you figure out she's not at fault, but you actually figure out that she's – it's even better than she's not at fault because she was affirmatively trying, reaching out and saying, are you sure I'm entitled to this? And basically you guys were telling her, yes, and if you're not, we'll let you know. And so isn't – I mean, isn't that something that ought to be factored into the waiver analysis, that she was given incorrect – it wasn't just that she was going along in perpetuity, not at fault, but, you know, not seeking – I think we have a question. Can you answer, Mr. Deuber? Yes. I think the answer is that it should be – it is a separate determination that does not need to be taken into account in determining the financial circumstances. And even if it were taken into account, I think it's sort of ambiguous or on the line because what it reflects is that she did know about the 80% limitation. She was concerned about it. That's why she called or contacted OPM more than once. Her income at the time when she was contacting OPM was double what it was when she was working at the Postal Service. And mind you, you know, there's inflation and things like that to be taken into account. It's publicly available information that she could have found if she just looked on the Internet. So, you know, the board – What could the OPM have? Yes. I think – I believe what one person said was that I think they're concerned that – and, again, I'm not trying to defend this as a response, but I think that they are somewhat concerned that if they tell people what the limit is and people sort of match their numbers to the number that they give them. Again, I'm not trying to defend that, but that's not an issue in this case. The issue is, you know, whether there's substantial evidence to support the board's decision, and I think that there is substantial evidence to support the board's decision. Any final thoughts, Mr. Deerberg? One issue that was raised was whether or not – Final sentence, I mean. We respect the request that the board's decision be affirmed. Thank you. Mr. Hendricks? Could you add a minute to Mr. Hendricks' time so that we're about even? Thank you.  Your Honor, it's a couple points I'd like to cover. First of all, the fact that it was four years of overpayments does go to the size of the overpayments, and the size of the overpayments, if we start with 195 as the figure, means that Ms. Zelenka will be paying approximately 19 years. Ms. Zelenka is in her mid-50s. She will not be working another 19 years. This is a debt that cannot possibly be paid during her working lifetime, and she doesn't have a federal pension waiting for her at the end of the rainbow. She has only her 401K, need I say more. And I asked you whether the amount per month could be adjusted downward if her expenses were adjusted upward, and you thought they could, but I wasn't able to really hear your comments about that. There is a procedure for going in if you have a change of circumstances, but it's not I got a bill today or something. It has to be my car broke down, I had to buy a new car, I now have a $400 payment, I can't pay anything. But it's the exception and not the rule. What we need to do today is determine whether she really has any realistic probability of paying this back. Counsel cited the Alexander case. Those are not the same kind of expenses. Do we really decide whether she has a realistic probability of paying it back? Whether it's a financial hardship. Whether there's a financial hardship involved. I'm sorry if I've given you a shorthand that I've come to sort of see this case. But there's a financial hardship involved here if she only has even the board's numbers. $195 extra. And that's nothing for car repairs and nothing for these veterinary meds. We put in statistics of what she'd actually spent. That's a good prognosticator of what the car expenses are going to be. The pattern and regularity of the expenses in 2006 and 2007 demonstrates that there will be future expenses of a similar nature and of a similar amount. If this court decides it will only be $150 a month instead of the almost $250 a month, so be it. But this number drives the number down to almost zero. There is not enough wiggle room here. The substantially all test is going to be met if the court allows either the car repair expenses or some combination of the car repair expenses and the veterinary expenses. The veterinary expenses are set out in 1127. The routine medication, $20 was the rate in January 2007, but it got up to $30 in December 2007. That kind of stuff goes up. Everything goes up. What doesn't go up is income sometimes. So her income is actually less now than it was then. That's not in the record. What we have here is expenses that council suggested we should have hired a garage mechanic and given expert testimony. They didn't even show up at the hearing. We presented the hearing evidence. We presented the evidence again at a second circumstance. There was no objection. There's no doubt in anybody's mind that these are real receipts. They're printed out on real paper, and they're in detail. We took them out of folders. You have them in the record. This is not speculative. This is not something that has no probative value about what her expenses are going to be. These are the real receipts, and they're not speculative. Well, I've got to replace a timing belt on my car, but I only have to do that once every 7 to 10 years. Right, but there are other items that have to be replaced on similar cycles. So if it's one thing this year, it's something else another year. And these are older cars. These are cars that are regularly going to go in for maintenance repairs. We're talking about a complete, just the regular, whatever it is, 50,000-mile checkup or 30,000-mile checkup, whatever your dealer. I mean, that's not in here. These are not just repairing broken items. This is going in and having the car totally looked at and totally doing the complete maintenance package. What we got was oil changes. They put in money for oil changes, and even then didn't give us enough money for all the oil changes that the manufacturer recommends. Your Honor, I think that this is a case where if you take a reasonable look at these expenses, they've been documented and under the applicable test, which the board has consistently applied but didn't apply here, where an expense can be substantiated by appropriate evidence. We submit that this was appropriate evidence. It must be accepted as ordinary and necessary unless a person of readable prudence would see it as a luxury or extravagance. Repairing your car so you can get to work is not a luxury or extravagance. There's no income if that car doesn't run. If that car doesn't run, they have to buy another car. The car repair expenses are a requirement for her life. The veterinary expenses and expenses for the cats, I guess reasonable people might be able to differ a little bit, but the benefit of the doubt still goes to the petitioner when she proves that there was an expense and it's not a luxury or extravagance. Having a couple of cats is not a luxury or extravagance, particularly in this circumstance because of the disabled husband. If she were to lose her job because her car broke down and she couldn't afford to get to work, I suppose she'd have to go back on government disability. That or at least go in and have them not expect her to make any payments because she'd find some kind of other job. Maybe she'd still be entitled to disability. This is an American success story where the disability system worked well for someone. Somebody who was a postal worker and got disabled went back to school and became a registered nurse. Final thoughts, Mr. Hendricks? The final thoughts here, Your Honor, are that this is a case where you should reverse the board's decision and find that a waiver is appropriate because there is a financial hardship under the law and you have an obligation to do that. Thank you, Mr. Hendricks. Our next case is Eastman Kodak v. Agfa.